In re Joyce A. WILLIAMS, Debtor.

Elsie A. Trucks, Plaintiff,

v.

Joyce A. Williams, Defendant.

Bankruptcy No. 05–bk–15946–JAF.
Adversary No. 06–ap–00158–JAF.

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

June 25, 2007.

---

**398**

Brian M. Rowland, Esq., Jacksonville, FL, for Plaintiff.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

JERRY A. FUNK, Bankruptcy Judge.

This proceeding came before the Court upon a complaint filed by Elsie A. Trucks

("Plaintiff") seeking to except the debt owed to her by Joyce A. Williams ("Debtor") from her discharge pursuant to 11 U.S.C. §§ 523(a)(2) and (19). The Court conducted a trial on March 29, 2007. Upon the evidence and arguments of parties, the Court makes the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

Magnolia–LTC, Inc., was a Delaware corporation established to manage the real property and business of Magnolia Manor Assisted Living Facility, located at 3339 U.S. Highway 17, Green Cove Springs, Florida ("Magnolia Manor"). Debtor was the president of Magnolia–LTC, Inc., during all relevant transactions of this proceeding. James D. Williams ("Mr. Williams") is the husband of Debtor and was an officer and director of Magnolia–LTC, Inc.

In June 2003, Plaintiff noticed an advertisement in the Florida Times Union classifieds "Business Opportunity" section. The advertisement(the "Ad") read as follows: "WANTED: Investors or partners for operating independent assisted living & adult day-care NE Florida call Jim at 904–703–8694." (Pl.'s Ex. 7.) The Ad was run in at least eight editions of the Florida Times–Union.[1] On or about July 1, 2003, Plaintiff called the phone number displayed in the Ad, which call was answered by "Jim", who is Mr. Williams, husband of Debtor. Pursuant to the conversation Plaintiff had with Mr. Williams on July 1, 2003, Plaintiff accepted an invitation by Mr. Williams to walk through Magnolia Manor to view the facilities on July 8, 2003 (the "Walk Through").

On July 8, 2003, Plaintiff attended the Walk Through with Mr. Williams. Plain-

---

1. These editions were June 7, 2003; June 8, 2003; June 9, 2003; June 14, 2003; June 15, 2003; June 16, 2003; June 18, 2003; and June 19, 2003. (Compl. at 3 and Ex. B.)

tiff testified that she never met Debtor during the Walk Through. Mr. Williams made representations to Plaintiff during the Walk Through regarding the facility, sales, occupancy expectations and profitable revenue projections. At the Walk Through, Mr. Williams provided Plaintiff with a one-page prospectus ("Prospectus") which outlined the projected anticipated income and expenses for Magnolia Manor through May 2004. (Pl.'s Ex. 6.) The Prospectus claimed that Magnolia Manor would receive a net profit of $73,384.00 for the twelve-month period ending May 2004.(*Id.*)

At this point during the Walk Through, Mr. Williams requested that Plaintiff make a $50,000.00 investment to purchase shares of Magnolia–LTC, Inc. Mr. Williams represented to Plaintiff that from Plaintiff's investment, she could expect a guaranteed return of 40% annually. Plaintiff would receive such return in monthly payments of $1,666.00. These representations made by Mr. Williams were memorialized in writing in the form of an Agreement for Stock Purchase ("Stock Purchase Agreement"), to which Plaintiff consented by signing her name on July 8, 2003 (Pl.'s Ex. 2.) According to the Stock Purchase Agreement, Plaintiff received 17 shares of stock in Magnolia–LTC, Inc. (the "Securities"), which entitled Plaintiff to $1,666.00 monthly payments to begin September 1, 2003. (*Id.*) The Stock Purchase Agreement also stated that the "business is based on a value of $1.2 million NOI" and that if the company enjoyed a success greater than the projected NOI, Plaintiff would "profit prorata [sic], but never less than $1,666.00 monthly." (*Id.*)

After signing the Stock Purchase Agreement, Plaintiff provided a check to Magnolia–LTC, Inc. for $50,000.00 (the "Securities Transaction"). (Pl.'s Ex. 3.) It was during the Securities Transaction that Plaintiff first met Debtor, Plaintiff testified. According to Plaintiff's testimony, Debtor simply exchanged niceties on the day of the signing. To memorialize the Securities Transaction, Debtor provided Plaintiff with a stock certificate, which Debtor signed in her capacity as president and as secretary of Magnolia–LTC, Inc. ("Stock Certificate"). (Pl.'s Ex. 5.) Debtor testified that neither she nor Magnolia–LTC, Inc. had a license or permit to issue securities in the state of Florida when she or Magnolia–LTC, Inc. issued the stock to Plaintiff.

Plaintiff received her first payment of $1,666.00 on September 1, 2003. Approximately three days after Plaintiff received her first payment, on or about September 4, 2003, Plaintiff was informed that if she invested an additional $10,000.00 in Magnolia–LTC, Inc., then her monthly payment would be increased to $2,000.00. Based upon these representations, Plaintiff tendered a check for an additional $10,000.00 on September 4, 2003. (Pl.'s Ex. 4.) After this additional investment, Plaintiff only received one payment of $1,000.00 in August 2004.

Realizing that she would not receive any further payments from Magnolia–LTC, Inc., at some time in 2004 Plaintiff filed suit against Debtor, Mr. Williams, Magnolia–LTC, Inc., and Mr. Harry C. Weldon in Duval County Circuit Court (Case No.: 2004–CA–008498), an action arising from the unlawful sale of securities (the "State Court Action"). Thereafter, Plaintiff, Debtor and Mr. Williams entered into a stipulated settlement agreement ("Settlement Agreement"), which provided that Plaintiff would receive $65,000.00 as a result of her investments in Magnolia–LTC, Inc. (Pl.'s Ex. 1.) The Settlement Agreement was signed by Plaintiff, Mr. Williams and Debtor. (*Id.* at 6.) Debtor then violated the Settlement Agreement by failing to

tender to Plaintiff her $65,000.00 settlement, and on December 28, 2005 a Final Judgment was entered in the State Court Action to Plaintiff for $65,000.00. On December 30, 2005, Debtor filed for Chapter 7 bankruptcy relief (Case No.: 05–bk–15946–JAF). Plaintiff states that Debtor is indebted to Plaintiff for $57,334.00, exclusive of prejudgment interest and attorneys' fees, which she asserts are permitted under state law pursuant to her state law claims (the "Debt").

## CONCLUSIONS OF LAW

Plaintiff contends that the Debt should be excepted from Debtor's discharge pursuant to 11 U.S.C. §§ 523(a)(2)(A) and (a)(19). Section 523(a)(2) provides:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition . . .

11 U.S.C. § 523(a)(2)(A) (2005). Section 523(a)(19) provides in pertinent part that a debt is excepted from a debtor's discharge for the violation of . . . any of the State securities laws, or any regulation or order issued under such . . . State securities laws; or common law fraud, deceit, or manipulation in connection with the purchase or sale of any security; and . . . results from—

(i) any judgment, order, consent order, or decree entered in any . . . State judicial or administrative proceeding;

(ii) any settlement agreement entered into by the debtor; . . .

11 U.S.C. § 523(a)(19)(A)(i), (A)(ii), (B)(i), and (B)(ii) (2005). Section 517.07, Florida

Statutes, further provides in pertinent part:

(1) It is unlawful and a violation of this chapter for any person to sell or offer to sell a security within this state unless the security is exempt under s. 517.051, is sold in a transaction exempt under s. 517.061, is a federal covered security, or is registered pursuant to this chapter.

(2) No securities that are required to be registered under this chapter shall be sold or offered for sale within this state unless such securities have been registered pursuant to this chapter and unless prior to each sale the purchaser is furnished with a prospectus meeting the requirements of rules adopted by the commission.

FLA. STAT. ANN. § 517.07(1) and (2) (West 2005). The Court will first address Plaintiff's argument that the Debt is excepted from Debtor's discharge pursuant to § 523(a)(19).

Debtor admitted through testimony that neither she nor her company, Magnolia–LTC, Inc., had a license or was otherwise registered with the state of Florida to sell securities to the public. Yet while neither she nor Magnolia–LTC, Inc. was registered to sell securities, Debtor, in her capacity as president and secretary of Magnolia–LTC, Inc., sold 17 shares of stock to Plaintiff for $50,000.00 and issued her a Stock Certificate evidencing the Securities Transaction. After a review of § 517.051, Florida Statutes, the Court concludes that the Securities issued were not exempt under the terms of those exemptions. In addition, the Securities were not a federal covered security.

According to § 517.061, Florida Statutes, a securities transaction is exempt from any registration with the state of Florida, so long as the "issuer [ ]or any person acting on behalf of the issuer [does

not] offer or sell [its own] securities ... by means of any form of general solicitation or general advertising in this state." FLA. STAT. ANN. § 517.061(11)(a)(2) (West 2005). In addition, under § 517.061, "[p]rior to the sale [of the issuer's own securities], each purchaser ... [must be] provided with, or given reasonable access to, full and fair disclosure of all material information" in order for the transaction to be exempt. *Id.* at (3). The Court finds that the Securities Transaction is not exempt according to Florida law because a general solicitation or advertisement was issued in the Florida Times–Union by way of the Ad. Moreover, the Court finds that Plaintiff was not provided with or given reasonable access to full and fair disclosure of all material information with respect to Magnolia Manor and Magnolia–LTC, Inc. Thus, Magnolia–LTC, Inc. was not exempt from registration with the state of Florida, and therefore the Securities Transaction with Plaintiff was a direct violation of § 517.07(1), Florida Statutes.

The Court also finds that the Prospectus Mr. Williams provided to Plaintiff on behalf of Debtor and Magnolia–LTC, Inc., was insufficient to conform with the requirements of § 517.07(2), Florida Statutes. According to the Florida Administrative Code, a prospectus must contain the following disclosure, shown boldly and on the outside cover:

THESE SECURITIES HAVE BEEN REGISTERED BY THE STATE OF FLORIDA, OFFICE OF FINANCIAL REGULATION, AS HAVING COMPLIED WITH CHAPTER 517, FLORIDA STATUTES. THE OFFICE OF FINANCIAL REGULATION HAS NOT PASSED ON THE ACCURACY OR ADEQUACY OF THIS PROSPEC-

TUS, AND SUCH REGISTRATION DOES NOT CONSTITUTE A RECOMMENDATION OF THE SECURITIES FOR INVESTMENT PURPOSES.

FLA. ADMIN. CODE ANN. r. 69W–700.002(1) (2005). The Prospectus did not contain such a disclosure. Furthermore, Florida law states that a prospectus must disclose information on whether the security holders will be furnished with annual reports, and whether such annual reports will contain certified audited or unaudited financial statements. FLA. ADMIN. CODE ANN. r. 69W–700.003(8) (2005). The Prospectus did not contain this required information either. As a result, the Prospectus provided to Plaintiff was inadequate according to Florida law, and therefore failed to meet the exemption listed in § 517.07(2), Florida Statutes.

Plaintiff obtained a final judgment from the State Court Action for $65,000.00. Plaintiff also entered into a Settlement Agreement with Debtor for $65,000.00, upon which Debtor then reneged. Either of these facts satisfies the requirement of § 523(a)(19). As a result, because Debtor violated § 517.07, Florida Statutes, a state securities law, and because Plaintiff obtained a Final Judgment from or entered into a Settlement Agreement with Debtor, the Debt is excepted from Debtor's discharge under § 523(a)(19). Because this Debt is excepted from Debtor's discharge, the Court need not decide whether the Debt would also be excepted from Debtor's discharge under § 523(a)(2)(A).[2]

### CONCLUSION

Debtor violated Florida's securities laws by selling securities in Magnolia–LTC, Inc., without registering with the state of

---

2. While analysis is not necessary, the Court finds that there is insufficient evidence to prove that Debtor procured Plaintiff's Debt by false pretenses, a false representation or fraud.

Florida before doing so. Debtor sold or allowed to be sold Magnolia–LTC, Inc. stock via the Ad, which constituted a general solicitation or general advertising, which prevented the Security Transaction from being exempt under Florida law. Debtor also failed to provide Plaintiff with a full and fair disclosure of all material information prior to the Security Transaction, further precluding an exemption under Florida law. The Prospectus provided to Plaintiff failed to meet the proper requirements of Florida law. These facts made the Security Transaction between Plaintiff and Debtor unlawful. Plaintiff obtained a Final Judgment based on an unperformed Settlement Agreement with Debtor, and is thus entitled to have the Debt excepted from Debtor's Chapter 7 discharge. The Court will enter a separate judgment in accordance with these Findings of Fact and Conclusions of Law.

### *JUDGMENT*

This proceeding came before the Court upon a complaint filed by Elsie A. Trucks ("Plaintiff") seeking to except the debt owed to her by Joyce A. Williams ("Debtor") from her discharge pursuant to 11 U.S.C. §§ 523(a)(2) and (19). Upon Findings of Fact and Conclusions of Law separately entered, it is

**ADJUDGED:**

1. The Court denies the relief requested in Count I.

2. Judgment is entered in favor of Plaintiff and against Debtor as to Count II. The State Court Action Final Judgment is excepted from Debtor's discharge pursuant to 11 U.S.C. § 523(a)(19).